IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KARSEEN J. ATKINSON,<br><br>                Petitioner,<br><br>vs.<br><br>ANTHONY J. ANNUCCI, Acting Commissioner, New York Department of Corrections and Community Supervision,[1]<br><br>                Respondent. | No. 9:17-cv-00812-JKS<br><br>MEMORANDUM DECISION |

Karseen J. Atkinson, a former New York state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. At the time he filed his Petition and throughout briefing in this case, Atkinson was in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") and incarcerated at Cayuga Correctional Facility. The DOCCS's inmate locator website (http://nysdoccslookup.doccs.ny.gov/, Department ID Number 06-B-2845), indicates that Atkinson was conditionally released to parole supervision on January 31, 2019. Atkinson has filed a change of address with this Court. Respondent has answered the Petition, and Atkinson has replied.

---

[1] Because Atkinson has been conditionally released from state prison, Anthony J. Annucci, Acting Commissioner, New York Department of Corrections and Community Supervision, is substituted as Respondent. FED. R. CIV. P. 25(c).

## I. BACKGROUND/PRIOR PROCEEDINGS

On April 13, 2011, Atkinson was charged with two counts of third-degree criminal possession of a controlled substance and one count of fourth-degree criminal possession of a weapon. On direct appeal of his conviction, the Appellate Division of the New York Supreme Court laid out the following facts underlying the charges against Atkinson:

> Police officers located [Atkinson], who they were seeking to arrest on an active parole violation warrant, as the passenger in a vehicle. When the officers effected a traffic stop, [Atkinson] ignored orders to show his hands and get out of the vehicle, so an officer removed him from the vehicle and placed him on the ground. After noticing something in [Atkinson's] mouth, officers ordered him to spit it out. When he failed to comply, at least one officer tased him. [Atkinson] still did not comply, so he was tased again. This time, [Atkinson] spit out a plastic bag that contained cocaine. Officers found another bag of cocaine in [Atkinson's] pocket upon conducting a search of his person. During a search of the vehicle, they found a handgun hidden in the trunk.

*People v. Atkinson*, 975 N.Y.S.2d 227, 228 (N.Y. App. Div. 2013).

Prior to trial, Atkinson moved for dismissal and suppression of the evidence on the grounds that the use of a taser constituted excessive force and other physical evidence was wrongfully obtained. The court denied the motions without a hearing. Atkinson also moved to suppress a statement he made to law enforcement during an interview. After holding a hearing to assess the voluntariness of Atkinson's statements, the court also denied that suppression motion. Jury selection began on January 30, 2012. The following day, right before opening statements, Atkinson moved to proceed *pro se*. After conducting a hearing, the court granted the request. At the conclusion of trial, the jury found Atkinson guilty as charged. The court subsequently sentenced him to concurrent prison terms of 8 years followed by 3 years of post-supervision on the drug counts and 1 year imprisonment on the weapon count.

Through counsel, Atkinson appealed the conviction, arguing that: 1) the trial court erred in permitting Atkinson to proceed *pro se*; 2) the county court should have dismissed the indictment because the police officer's use of a taser in uncovering the cocaine from Atkinson's mouth constituted excessive force; and 3) the county court should have withheld the cocaine evidence found in his mouth due to the excessive force used. In a reasoned opinion, the Appellate Division found in favor of Respondent on many claims but held that the trial court should have held a hearing to determine whether the use of a taser might be considered excessive force. *Atkinson*, 975 N.Y.S.2d at 230. It thus held the appellate proceedings in abeyance and remanded the case to the county court to hold a suppression hearing. *Id.*

Upon remand, county court held a hearing and found that the use of force was reasonable. It thus denied Atkinson's suppression motion. Atkinson then filed a counseled supplemental appeal challenging the denial of his suppression motion. Considering the sole issue of whether the seizure of evidence from Atkinson was through the use of excessive force, the Appellate Division unanimously affirmed the judgment, agreeing with county court that the police officers' response was reasonable. *People v. Atkinson*, 989 N.Y.S.2d 685, 688 (N.Y. App. Div. 2014). The New York Court of Appeals summarily denied leave to appeal on October 16, 2015. *People v. Atkinson*, 42 N.E.3d 217, 217 (N.Y. 2015).

Atkinson then filed two *pro se* applications for writ of error *coram nobis* on the ground that his appellate counsel was ineffective. In the first motion, he alleged that appellate counsel was ineffective for failing to argue that the trial court had improperly denied him an evidentiary hearing on his motion to suppress evidence of cocaine found in his pocket and a gun found in the car. The second motion faulted appellate counsel for not investigating the facts and law relevant to his case.

3

The Appellate Division denied each motion without comment, and the Court of Appeals summarily denied his applications for leave to appeal.

Atkinson also filed in county court a *pro se* motion to vacate the judgment pursuant to New York Criminal Procedure Law ("CPL") § 440.10. Atkinson claimed, among other things, that the prosecution failed to provide the defense with a copy of the Ithaca Police Department's internal guidelines on the use of tasers, in violation of *Brady v. Maryland*, 373 U.S. 8 (1963).[2] The county court denied the motion, finding that the claim was not based on newly-discovered evidence and therefore could have, but was not, raised on direct appeal.[3] The Appellate Division summarily denied Atkinson's application for leave to appeal on June 23, 2017.

Atkinson then timely filed the instant *pro se* Petition for a Writ of Habeas Corpus to this Court on July 24, 2017. Docket No. 1 ("Petition"); *see* 28 U.S.C. § 2244(d)(1)(A).

## II. GROUNDS RAISED

In his *pro se* Petition before this Court, Atkinson raises two grounds for relief. First, Atkinson argues that appellate counsel rendered ineffective assistance by failing to investigate the facts and the law relevant to his case. Second, Atkinson claims that the prosecutor violated his due process rights by failing to disclose, prior to the suppression hearing, a copy of the Ithaca Police Department's internal guidelines on the use of tasers.

---

[2] The term "*Brady*" is a shorthand reference to the rules of mandatory discovery in criminal cases under federal law. *Brady*, 373 U.S. at 8.

[3] *See* N.Y. CRIM. PROC. LAW § 440.10(2)(c) ("[T]he court must deny a motion to vacate a judgment when[,] [a ]lthough sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal . . . .").

4

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson*, 229 F.3d 112, 118 (2d Cir. 2000). Where there is no reasoned decision of the state court addressing the ground or grounds raised on the merits and no independent state grounds exist for not addressing those

grounds, this Court must decide the issues de novo on the record before it. *See Dolphy v. Mantello*, 552 F.3d 236, 239-40 (2d Cir. 2009) (citing *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)); *cf. Wiggins v. Smith*, 539 U.S. 510, 530-31 (2003) (applying a de novo standard to a federal claim not reached by the state court). In so doing, the Court presumes that the state court decided the claim on the merits and the decision rested on federal grounds. *See Coleman v. Thompson*, 501 U.S. 722, 740 (1991); *Harris v. Reed*, 489 U.S. 255, 263 (1989); *see also Jimenez v. Walker*, 458 F.3d 130, 140 (2d Cir. 2006) (explaining the *Harris-Coleman* interplay); *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 810-11 (2d Cir. 2000) (same). This Court gives the presumed decision of the state court the same AEDPA deference that it would give a reasoned decision of the state court. *Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011) (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference); *Jimenez*, 458 F.3d at 145-46. Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## IV. DISCUSSION

A. Mootness

Article III, § 2 of the United States Constitution requires the existence of a case or controversy through all stages of federal judicial proceedings. This means that, throughout the litigation, the petitioner "must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990) (citations omitted); *see also Preiser v. Newkirk*, 422 U.S. 395, 401 (1975) ("The rule in federal cases is that an actual controversy must be extant at all stages of review, not

6

merely at the time the complaint is filed.") (citation omitted). Thus, a case is moot "when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000) (internal quotation marks and citations omitted); *Lavin v. United States*, 299 F.3d 123, 128 (2d Cir. 2002). "The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed." *Martin-Trigona v. Shiff*, 702 F.2d 380, 386 (2d Cir. 1983). "[I]f an event occurs during the course of the proceedings or an appeal that makes it impossible for the court to grant any effectual relief whatever to a prevailing party, [the court] . . . must dismiss the case" as moot. *United States v. Blackburn*, 461 F.3d 259, 261 (2d Cir. 2006) (citation and internal quotation marks omitted).

As previously mentioned, the record before this Court indicates that Atkinson has been conditionally released from prison to parole supervision. However, a petition for habeas corpus relief does not necessarily become moot when the petitioner is released from prison. Rather, the matter will remain a live case or controversy if there remains "some concrete and continuing injury" or "collateral consequence" resulting from the conviction. *Spencer v. Kemna*, 523 U.S. 1, 7 (1998). In cases where the petitioner challenges the conviction itself, the Supreme Court "has been willing to *presume* the existence of collateral consequences sufficient to satisfy the case-or-controversy requirement" even if those collateral consequences "are remote and unlikely to occur." *United States v. Probber*, 170 F.3d 345, 348 (2d Cir. 1999) (emphasis omitted) (quoting *Spencer*, 523 U.S. at 8). This presumption of collateral consequences has been justified on the theory that "most criminal convictions do in fact entail adverse collateral legal consequences," including deportation, enhancement of future criminal sentences, and certain civil disabilities such as being barred from holding certain offices, voting in state elections, and serving on a jury. *United States v. Mercurris*,

7

192 F.3d 290, 293 (2d Cir. 1999) (quoting *Sibron v. New York*, 392 U.S. 40, 54-56 (1968)). Accordingly, because Atkinson is still in the custody of the New York DOCCS[4] and, in any event, still subject to collateral consequences of his conviction, Jackson's Petition has not been rendered moot by his release from prison.

B. Merits

　　Ground 1.　　*Ineffective Assistance of Counsel*

Atkinson first argues that he was denied the right to effective assistance of counsel because appellate counsel failed to investigate the facts and the law relevant to his case. Atkinson raised this claim to the state courts in his second *coram nobis* motion, which faulted counsel for failing to argue that: 1) county court erred in denying his request for an evidentiary hearing on his motion to suppress cocaine found in his pocket and a gun in the car; and 2) county court erred in denying his motion to suppress his post-arrest statement to police. The Appellate Division silently denied the claim in its summary dismissal of his *coram nobis* application.

To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a defendant must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense. 466 U.S. 668, 687 (1984). A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* The Supreme Court has explained that, if there is a reasonable probability that

---

　　　[4]　　A prisoner conditionally released on parole supervision remains in the legal custody of the DOCCS until the expiration of his full maximum expiration date. *See* N.Y. Department of Corrections and Community Supervision Website, *Offender Information Data Definitions*, http://www.doccs.ny.gov/calendardatadefinitions.html (noting under "conditional release date" that "[i]f an inmate is conditionally released, he or she will be under parole supervision of some level until his or her term expires (i.e., when the maximum expiration date is reached")).

the outcome might have been different as a result of a legal error, the defendant has established prejudice and is entitled to relief. *Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at 393-95. Thus, Atkinson must show that his counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different. *See Hill v. Lockhart,* 474 U.S. 52, 57 (1985). An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs. *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

New York's test for ineffective assistance of counsel under the state constitution differs slightly from the federal *Strickland* standard. "The first prong of the New York test is the same as the federal test; a defendant must show that his attorney's performance fell below an objective standard of reasonableness." *Rosario v. Ercole*, 601 F.3d 118, 123 (2d Cir. 2010) (citing *People v. Turner*, 840 N.E.2d 123 (N.Y. 2005)). The difference is in the second prong. Under the New York test, the court need not find that counsel's inadequate efforts resulted in a reasonable probability that, but for counsel's error, the outcome would have been different. "Instead, the 'question is whether the attorney's conduct constituted egregious and prejudicial error such that the defendant did not receive a fair trial.'" *Id.* at 123 (quoting *People v. Benevento*, 697 N.E.2d 584, 588 (N.Y. 1998)). "Thus, under New York law the focus of the inquiry is ultimately whether the error affected the 'fairness of the process as a whole.'" *Id.* (quoting *Benevento*, 697 N.E.2d at 588). "The efficacy of the attorney's efforts is assessed by looking at the totality of the circumstances and the law at the

time of the case and asking whether there was 'meaningful representation.'" *Id.* (quoting *People v. Baldi*, 429 N.E.2d 400, 405 (N.Y. 1981)).

The New York Court of Appeals views the New York constitutional standard as being somewhat more favorable to defendants than the federal *Strickland* standard. *Turner*, 840 N.E.2d at 126. "To meet the New York standard, a defendant need not demonstrate that the outcome of the case would have been different but for counsel's errors; a defendant need only demonstrate that he was deprived of a fair trial overall." *Rosario*, 601 F.3d at 124 (citing *People v. Caban*, 833 N.E.2d 213, 222 (N.Y. 2005)). The Second Circuit has recognized that the New York "meaningful representation" standard is not contrary to the federal *Strickland* standard. *Id.* at 124, 126. The Second Circuit has likewise instructed that federal courts should, like the New York courts, view the New York standard as being more favorable or generous to defendants than the federal standard. *Id*. at 125.

Atkinson's ineffective assistance claims must fail, however, even under the more favorable New York standard. Atkinson first faults counsel for failing to argue that the county court erred in denying his request for an evidentiary hearing on his motion to suppress evidence of cocaine found in his pocket and a handgun found in the car. Notably, the Appellate Division concluded only that a suppression hearing was warranted only with respect to the evidence of cocaine recovered from Atkinson's mouth after he was tased twice. *Atkinson*, 975 N.Y.S.2d at 230. As the Appellate Division reasonably and correctly concluded, there was no basis to suppress the other evidence:

> Initially, [Atkinson] does not contest on appeal the search of the vehicle that produced the handgun, as he has no standing to challenge that search that was conducted based on consent by the vehicle's owner. Hence, the court properly denied suppression of the handgun without a hearing. The bag of cocaine located in [Atkinson's] pocket was found during a search incident to a lawful arrest on a parole violation warrant, and [Atkinson] did

10

not raise any factual issues concerning that piece of evidence, so the court properly denied suppression of that bag of cocaine without a hearing.

*Id.*

Consequently, counsel cannot be faulted for failing to take meritless actions. *See Aparicio v. Artuz*, 269 F.3d 78, 99 (2d Cir. 2001) (holding that it is not ineffective assistance where counsel fails to raise meritless claims).

Likewise, Atkinson fails to show that appellate counsel was deficient for not arguing that the county court erred in denying his motion to suppress his post-arrest statement to the police. The record reflects that the county court held a *Huntley*[5] hearing to address the voluntariness of Atkinson's statement during a police interview where he admitted to possessing the cocaine and purchasing the illegal handgun only moments before his arrest. The defense was allowed to question Investigator McKenna extensively about the interview and his testimony that Atkinson stated that he wished to speak without a lawyer present after he had been read his *Miranda* rights and warnings. A recording of the interview was also entered into evidence. Atkinson's mere statement that the suppression motion should have been granted is insufficient to conclude that counsel had a basis for such argument where the evidence at the *Huntley* hearing established that Atkinson knowingly and voluntarily waived his constitutional rights and agreed to speak to police without counsel present. Accordingly, Atkinson is not entitled to relief on either argument advanced in support of his ineffective assistance of appellate counsel claim.

---

[5] *People v. Huntley*, 371 N.E.2d 794 (N.Y. 1977) (a shorthand reference to the procedure under New York law for seeking suppression of statements made to law enforcement officers).

Ground 2.  *Brady Violation*

Atkinson additionally avers his due process rights were violated because the prosecutor failed to provide him with a copy of the Ithaca Police Department's internal guidelines on its use of tasers. As an initial matter, Respondent correctly notes that this claim is procedurally barred on federal habeas review by the county court's adequate and independent finding of a procedural default in rejecting this claim in Atkinson's motion to vacate. "[A]n adequate and independent finding of procedural default will bar federal habeas review of the federal claim." *Harris*, 489 U.S. at 262. In finding this claim unpreserved for appellate review, the trial court relied upon CPL § 440.10(2)(c), which requires a state court to deny a motion to vacate a judgment based on a constitutional violation where the defendant unjustifiably failed to argue the constitutional violation on direct appeal despite a sufficient record upon which to base such an appeal. The purpose of the rule set forth in CPL § 440.10(2)(c) "is to prevent CPL 440.10 from being employed as a substitute for direct appeal when [the] defendant was in a position to raise an issue on appeal . . . or could readily have raised it on appeal but failed to do so." *People v. Cooks*, 491 N.E.2d 676, 678 (N.Y. 1986) (citations omitted). Federal courts in this Circuit have consistently held that where a state court concluded that a petitioner's claim raised in a CPL § 440.10 was procedurally barred by CPL § 440.10(2)(c), and the claim was indeed fully developed in the trial record, the petitioner has also defaulted that claim on federal habeas review. *See Sweet v. Bennett*, 353 F.3d 135, 139-41 (2d Cir. 2003); *McCall v. Rivera*, 965 F. Supp. 2d 311, 334-35 (S.D.N.Y. 2013); *Hogan v. West*, 448 F. Supp. 2d 496, 506-07 (W.D.N.Y. 2006). Because Atkinson has failed to assert cause for the default and prejudice, or that failure to consider the claim will result in miscarriage of justice, his claim is procedurally defaulted from review by this Court. *Sweet*, 353 F.3d at 141.

Moreover, Atkinson's claim fails on the merits. To establish a *Brady* violation, a petitioner must show that (1) the undisclosed evidence was favorable to him; (2) the evidence was in the state's possession and was suppressed, even if inadvertently; and (3) the defendant was prejudiced as a result of the failure to disclose." *Mack v. Conway*, 476 F. App'x 873, 876 (2d Cir. 2012) (citing *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999)). Atkinson fails to show that the Police Department's internal taser policy was material because, even assuming that it would have been favorable to his case, it would only have been relevant to whether the police officers complied with the Department's internal guidelines, *not* whether the police officers' actions were objective unreasonable, which is what the hearing court needed to find for Atkinson to prevail on his suppression motion. Accordingly, there is no reasonable probability that disclosure of the report would have led to a different outcome in this case, and Atkinson is not entitled to relief on this claim either.

## V. CONCLUSION

Atkinson is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*,

537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Court of Appeals. *See* FED. R. APP. P. 22(b); 2D CIR. R. 22.1.

The Clerk of the Court is to enter judgment accordingly.

Dated: February 28, 2019.

/s/ James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
Senior United States District Judge
